UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES, DISTRICT COUNCIL NO. 11; DISTRICT COUNCIL NO. 11 APPRENTICESHIP & TRAINING FUND; DISTRICT COUNCIL NO. 11 LABOR MANAGEMENT PARTNERSHIP FUND; RHODE ISLAND PAINTERS & ALLIED TRADES, LOCAL UNION 195, HEALTH & WELFARE FUND; and RICHARD J. TROUVE, in his official capacity as Business Representative for District Council No. 11 and Painters Local 195, | C.A. No. 04-145ML |
| V. | |
| KEITH ROBINSON PAINTING, INC. | |
| V. | |
| O. AHLBORG & SONS, INC. | |

**DEFENDANT, KEITH ROBINSON PAINTING, INC.'S OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Now comes Defendant and Third Party Plaintiff, Keith Robinson Painting, Inc., and hereby objects to Plaintiff, International Union of Painters & Allied Trades, District Council No. 11, et al's Motion For Summary Judgment.

The reasons for the Objection are outlined in the attached Memorandum In Support of Objection To Plaintiff's Motion For Summary Judgment.

KEITH ROBINSON PAINTING, INC.

By Its Attorneys,

Linn F. Freedman (#4778)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, Rhode Island 02903
Telephone: (401) 454-1108
Fax: (866) 807-6614

Date: July 26, 2005

## CERTIFICATION

I hereby certify that on this 26th day of July, 2005, I caused a true copy of the within Defendant and Third Party Plaintiff's Objection to Plaintiff's Motion for Summary Judgment to be mailed to the following:

Elizabeth Wiens, Esq.
Gursky Law Associates
420 Scrabbletown Rd., Suite C
North Kingstown, RI 02852

John E. Bulman, Esq.
Little, Medeiros, Kinder, Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES, DISTRICT COUNCIL NO. 11; DISTRICT COUNCIL NO. 11 APPRENTICESHIP & TRAINING FUND; DISTRICT COUNCIL NO. 11 LABOR MANAGEMENT PARTNERSHIP FUND; RHODE ISLAND PAINTERS & ALLIED TRADES, LOCAL UNION 195, HEALTH & WELFARE FUND; and RICHARD J. TROUVE, in his official capacity as Business Representative for District Council No. 11 and Painters Local 195, | : | C.A. No. 04-145ML |
| V. | : | |
| KEITH ROBINSON PAINTING, INC. | : | |
| V. | : | |
| O. AHLBORG & SONS, INC. | : | |

**MEMORANDUM IN SUPPORT OF OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant and third-party plaintiff, Keith Robinson Painting, Inc. ("Robinson") hereby objects to Plaintiff's Motion for Summary Judgment for the reasons set forth below.

**The Facts**

This litigation arises out of a construction project known as Jefferson Place Apartments in Providence, Rhode Island. O. Ahlborg & Sons, Inc. ("Ahlborg") was the successful bidder for the general contract. Ahlborg subcontracted portions of the work out to subcontractors, including Robinson, which performed the painting portion of the job.

In order for Robinson to bid on the job, it was required to utilize union workers. When contracting with the union, there was no negotiation with respect to the contractual provisions (Please see attached Exhibit A). The union contract was provided to Robinson on a take-it-or-leave-it basis. Robinson did not consult a lawyer or obtain any advice when presented with the union contract. Robinson was aware that if he wanted the job, he had to sign the contract and there was no negotiation. (Please see Exhibit A).

Robinson was successful in obtaining the painting portion of the subcontract and commenced work pursuant to the contract. During the performance of the work, certain problems were encountered due to the faulty workmanship of other subcontractors. (Please see Robinson's Third Party Complaint). As a result of the faulty workmanship of other subcontractors, it was necessary for Robinson to perform additional work outside of the original terms of the contract. In June of 2003, an agreement was reached between Robinson and Ahlborg wherein Ahlborg would continue to pay Robinson to stay on the job to complete the work, despite the fact that the work contemplated by the agreement and the amount paid for such work had been depleted. The agreement included the direct payment of union dues, costs and expenses. (See Exhibit A and Third Party Complaint).

When Ahlborg and Robinson reached the agreement for Ahlborg to pay all costs and expenses associated with the additional work to complete the job, including union dues and expenses, the union was aware of the agreement between Ahlborg and Robinson. In fact, Ahblorg paid the union directly for the union benefits from June of 2003 until October of 2003. (Please see Exhibit A).

In October of 2003, Ahlborg stopped paying the union benefits and dues that it had previously agreed to pay and had been paying since June of 2003. When Ahlborg stopped

paying the union dues and benefits, Robinson discussed the situation with Richard Trouve, business manager of the local union. Mr. Trouve was aware that Ahlborg had been paying the union benefits and dues for the painters. In addition, Robinson discussed with Mr. Trouve whether or not the union workers should stay on the job due to the fact that Robinson was unable to pay the union dues and expenses as Ahlborg was also not paying Robinson for the work being performed. The union had every opportunity to take the union workers off the job, but failed to do so. Despite the fact that Ahlborg continued to fail to pay Robinson and the union, the union kept the men on the job. Finally, on December 12, 2003, Robinson walked off the job. (Please see Exhibit A).

The union filed suit against Robinson and Robinson filed a Third Party Complaint against Ahlborg as Ahlborg is responsible for the amounts due to the union, including interest, attorney's fees and penalties. Robinson was never advised by the union, either prior to, or during the time that the union contract was in effect, that the union would seek penalties, interest and attorney's fees against Robinson. In particular, at no time after Ahlborg stopped paying the union dues and expenses directly to the union, and during the period of time that the union continued to keep the workers on the job, did the union ever advise Robinson that it would allege that he would be responsible to pay penalties, interest and attorney's fees that add up to almost three times the principal amount owed. The union had total control of whether or not it would allow the workers to stay on the job, taking into account the fact that Ahlborg was not paying the dues and expenses and therefore, the union had the responsibility to mitigate its damages and failed to do so.

## Argument and the Law

**A. Standard for Summary Judgment.**

In order for Plaintiff to prevail on a Motion for Summary Judgment, Plaintiff must prove that there is no genuine issue as to any material fact and it is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c). The Court must view the entire record in the light most favorable to the party opposing summary judgment, and indulge all reasonable inferences in that party's favor. The Beacon Mutual Ins. Co. v. One Beacon Ins. Group, 376 F.3d 8 (1st Cir. 2004).

Plaintiff is unable to sustain the burden of proof as there are several issues of material fact which are in dispute in this matter. They include the facts outlined in the Affidavit of Keith Robinson, attached at Exhibit A. Additional facts that are in dispute include the fact that 1) the contract the union required Robinson to sign in order to perform the job was unconscionable and a contract of adhesion; 2) the union failed to mitigate its damages and never informed Robinson that it would seek penalties, costs and attorney's fees because Ahlborg failed to pay the union benefits and expenses as promised; and 3) the determination of who is actually responsible for the amount owed to the union, including the adjudication of Robinson's Third Party Complaint against Ahlborg. Because these facts are in dispute, Plaintiff's Motion for Summary Judgment must be denied.

**B. The Union Contract is Unconscionable.**

As set forth in the Affidavit of Keith Robinson, attached as Exhibit A, in order for Robinson to successfully bid on the JPI job, Robinson was required to sign a union contract and utilize union workers on the job. There was no negotiation with respect to the terms of the union contract and the contract was presented to him on a take-it-or-leave-it basis. Robinson did not

obtain advice from counsel concerning the terms of the contract and signed the contract in order to be awarded the painting portion of the job.

Certain terms of the union contract are unconscionable and should not be enforced by this Court. Specifically, the Plaintiff's claims of costs, penalties and attorney's fees as outlined in Plaintiff's Motion for Summary Judgment should not be enforceable upon Robinson for several reasons:

1) Robinson was never made aware of the fact that the union would seek such penalties, attorney's fees and costs against him as a result of Ahlborg's failure to pay the union benefits and fees as promised;

2) The contract was submitted to Robinson on a take-it-or-leave-it basis;

3) Robinson never obtained advice concerning the terms of the contract; and

4) The contract terms relating to costs, penalties and attorney's fees are overwhelmingly adverse to Robinson.

"In order to establish unconscionability, a party must prove (1) there is an absence of 'meaningful choice' on the part of one of the parties; and (2) the challenged contract terms are 'unreasonably favorable' to the other party. E. H. Ashley & Co. v. Wells Fargo Alarm Services, 907 F.2d 1274, 1278 (1st Cir 1990). Factors weighing into the decision of whether or nor a contract is unconscionable include disproportionate bargaining power, non-availability of alternatives, and an illegal, oppressive or unreasonable contract." Id.

Contracts which are unconscionable have also been called contracts of adhesion, defined by the Rhode Island Supreme Court as "a phrase descriptive of a standard form printed contract prepared by one party and submitted to another on a take-it-or-leave-it basis. Usually, there is no true equality of bargaining power between the parties." Richard C. Young and Co., Ltd. v.

Leventhal, 298 F.Supp. 2d 160 (D. Ma. 2003); Pickering v. American Employers Ins. Co., 282 A.2d 584 (R.I. 1971).

Based upon the case law cited above, the contract presented to Robinson on a take-it-or-leave-it basis, which was a pre-printed contract with no negotiation options, fits the criteria of a contract of adhesion and is unconscionable. Robinson has proven through Exhibit A, that the contract is unconscionable. At no time was there a meaningful choice on the part of Robinson to negotiate any terms of the contract in order to obtain the job. In addition, the terms of the contract are unreasonably favorable to the union, particularly with respect to the union's claim of penalties, interest and attorney's fees. The startling truth that supports Robinson's allegation that the contract is unconscionable is Plaintiff's admission that the principal amount owed from October 2003 through December 2003 is $46,388.09. However, Plaintiff is seeking judgment against Robinson in the amount of $150,939.99. Not only is Robinson not responsible for the principal amount to the union, but the terms outlined by the Plaintiff to justify its request for a judgment against the Defendant more than three times the true amount owed to the Plaintiff is prima facie proof of the unfavorable nature of the contract terms against Robinson.

Accordingly, based upon the foregoing, Robinson requests that the Court find that the contract is unconscionable and a contract of adhesion.

**C. The Union Failed to Mitigate its Damages**

"It is the duty of one injured by breach of contract to make reasonable exertions to save himself from loss. He can charge the delinquent with such damage only as with reasonable endeavors and expenses he could not prevent." Cunningham Iron Co. v. Warren Mfg. Co., 80 F. 878 (C.C.D.R.I. 1897). The doctrine of mitigation of damages imposes on the party injured by an alleged breach of contract, the duty to exercise reasonable diligence and ordinary care in

attempting to minimize its damages. Fleet Nat. Bank v. Anchor Media Television, Inc., 45 F.3d 546 (1st Cir. 1995); Cottle v. Gallup, 432 F.2d 43 (1st Cir. 1970).

In this case, the union had a duty and responsibility to attempt to reduce or limit the amount of damages owed it with respect to Ahlborg's failure to pay the union dues and expenses as promised from October 2003 through December 2003. Specifically, between June of 2003 and October of 2003, Ahlborg paid the union directly for such dues and benefits. (Please see Exhibit A). When Ahlborg stopped paying the union, it had every duty and right to remove the union workers from the job in order to mitigate the damages, particularly when Robinson advised the union that it was unable to pay the benefits when Ahlborg stopped paying them because Ahlborg was not paying Robinson either. The union did nothing to mitigate its damages and in fact, kept union workers on the job until Robinson himself walked off the job on December 12, 2003. It was Robinson who mitigated the damages by walking off the job as neither the union nor Ahlborg were providing any relief. Not only did the union fail to mitigate the damages by taking workers off the job immediately after Ahlborg stopped paying the amounts due, the union then filed suit against Robinson, knowing full well that Ahlborg was responsible for the amounts due.

To add insult to injury, Magistrate Judge Lovegreen brought the parties together in an attempt to resolve the matter. Ahlborg attempted to resolve the union's dispute, but the Plaintiff refused such resolution. The Plaintiff now has the gall to seek triple the actual amount owed from the party that isn't responsible after it was the one who refused to enter into a resolution.

Allowing the union to obtain a judgment three times the principal amount from Robinson, when the union was aware that Ahlborg actually owed the amounts due, and received payments directly from Ahlborg, flies in the face of equitable principles and justice.

Accordingly, Robinson requests that Plaintiff's Motion for Summary Judgment be denied.

**D. Ahlborg is Responsible to the Union for the Amounts Requested.**

As outlined in Robinson's Third Party Complaint against Ahlborg, Ahlborg is the party responsible to the union for the amounts requested. As evidenced by Exhibit A, Ahlborg entered into an agreement with Robinson for Robinson to continue working on the job with the promise that Ahlborg would pay all union dues and expenses associated with the job, as well as pay Robinson overhead and profit as a result of the additional work performed. Ahlborg paid the union directly for the dues and expenses from June of 2003 through October of 2003. In October of 2003, Ahlborg stopped paying the union dues.

Ahlborg is the real party in interest with respect to the amounts owed. Certainly, the question of the responsibility of Ahlborg for Plaintiff's claim is germane to the Motion for Summary Judgment as the union seeks judgment directly against Robinson, which is not the true responsible party. Accordingly, granting the Motion for Summary Judgment would be premature as there has not been a determination of the responsibility of Ahlborg in this matter, due to the Court's issuance of a Stay of the Third Party Complaint.

Accordingly, for the foregoing reasons, Defendant and Third Party Plaintiff, Robinson, respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment.

KEITH ROBINSON PAINTING, INC.

By Its Attorneys,

Linn F. Freedman

Linn F. Freedman (#4778)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, Rhode Island 02903
Telephone: (401) 454-1108
Fax: (866) 807-6614

Date: July 26, 2005

## CERTIFICATION

I hereby certify that on this 26th day of July, 2005, I caused a true copy of the within Memorandum in Support of Objection to Plaintiff's Motion for Summary Judgment to be mailed to the following:

Elizabeth Wiens, Esq.
Gursky Law Associates
420 Scrabbletown Rd., Suite C
North Kingstown, RI 02852

John E. Bulman, Esq.
Little, Medeiros, Kinder, Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903

Merida Dorris

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| INTERNATIONAL UNION OF PAINTERS & ALLIED TRADES, DISTRICT COUNCIL NO. 11; DISTRICT COUNCIL NO. 11 APPRENTICESHIP & TRAINING FUND; DISTRICT COUNCIL NO. 11 LABOR MANAGEMENT PARTNERSHIP FUND; RHODE ISLAND PAINTERS & ALLIED TRADES, LOCAL UNION 195, HEALTH & WELFARE FUND; and RICHARD J. TROUVE, in his official capacity as Business Representative for District Council No. 11 and Painters Local 195, | C.A. No. 04-145ML |
| V. | |
| KEITH ROBINSON PAINTING, INC. | |
| V. | |
| O. AHLBORG & SONS, INC. | |

**AFFIDAVIT OF KEITH ROBINSON**

I, Keith Robinson, being first duly sworn, deposes and states as follows:

1. I am the owner of Keith Robinson Painting, Inc. ("Robinson"), the defendant and third-party plaintiff in this matter.

2. Keith Robinson Painting, Inc. bid on a job for work to be performed at the Jefferson Place Apartments and was successful in being chosen to perform certain painting work on the Jefferson Place Apartments project as a subcontractor to O. Ahlborg & Sons, Inc. ("Ahlborg"), the general contractor on the job.

3. Keith Robinson Painting, Inc. performed painting services at Jefferson Place Apartments pursuant to the subcontract with Ahlborg and Ahlborg paid for such painting services until approximately June of 2003.

4. At that time, Ahlborg stopped paying Robinson for the painting services performed.

5. As a result of Ahlborg's failure to pay Robinson, Robinson entered into an agreement with representatives from Ahlborg that Robinson would continue working on the job provided that Ahlborg would pay all costs and expenses associated with keeping men on the job, including union dues and fees.

6. Richard Trouve, the business representative for the union, was aware that Ahlborg had agreed to pay such expenses and dues directly to the union on behalf of the painters working on the job.

7. In fact, Richard Trouve and/or the union sent invoices for union dues and fees directly to Ahlborg from June of 2003 through October of 2003.

8. Ahlborg paid such dues and expenses for the union painters working on the JPI job from June of 2003 through October of 2003. Upon information and belief, Ahlborg paid the union approximately $160,000 in union dues and expenses between June of 2003 and October of 2003.

9. In October of 2003, Ahlborg stopped paying the dues and expenses including to the Plaintiff, as agreed to in June of 2003.

10. When Ahlborg stopped paying the union dues and expenses for the painters on the job, I spoke with Richard Trouve concerning whether or not we should keep the union painters

on the job. Mr. Trouve had every opportunity to pull the union workers off the job when he became aware that Ahlborg had stopped paying the union dues and expenses of the painters.

11. In addition, I advised Mr. Trouve, and Mr. Trouve was well aware of the fact that Robinson would not be able to pay the union dues and expenses for the union painters on the job because Ahlborg had not paid Robinson for any work performed since June of 2003.

12. Mr. Trouve made the decision to keep the union painters on the job knowing that Robinson could not pay the union dues and expenses and that Ahlborg had stopped paying the dues and expenses since October of 2003.

13. I continued to attempt to obtain payment from Ahlborg from October of 2003 through December 11, 2003 and continued to have conversations with Mr. Trouve regarding the fact that Ahlborg was not paying the union dues and expenses and that I was unable to do so as Ahlborg was not paying me for work performed.

14. Mr. Trouve continued to allow the union painters to work on the job and refused to remove them from the job.

15. Because Ahlborg was not paying the dues and expenses and Mr. Trouve was not taking the workers off the job, I walked off the job on December 12, 2003 because I was not being paid and I knew that Ahlborg was not paying the union dues and expenses as promised.

16. In order to be able to work on the JPI project, I had to sign the union contract.

17. I did not have any legal representation, nor did I obtain any advice with respect to the content of the union contract.

18. The union contract was presented to me on a take it or leave it basis. If I signed it, I could work on the job. If I didn't sign it, I would not get the job.

19. When I signed the union contract, the union did not tell me that if union dues were not paid, that they would seek interest, penalties and attorneys' fees that add up to almost three times the amount of the principal amount owed.

20. At no time in October of 2003 of thereafter when Ahlborg stopped paying the union dues and fees did Mr. Trouve or any other union representative advise me that the union would seek not only the principal amount, but interest, penalties and attorneys' fees that would add up to almost three times the principal amount owed as a result of Ahlborg's failure to pay the union dues.

21. The union had every opportunity to take the men off the job when they knew that Ahlborg refused to pay the fees and expenses associated with union painters on the job in October of 2003. Accordingly, it should not be entitled to costs, attorneys' fees and penalties as a result of its failure to take its union workers off the job, when it had full opportunity to do so.

22. As outlined in the Third Party Complaint filed against Ahlborg in this case, Ahlborg is responsible for the entire amount owed to the union in this matter.

Keith Robinson

SC 100859320

Date: July 22, 2005

STATE OF South Carolina
COUNTY OF Dorchester

Sworn to and subscribed before me notary public, this 22 day of July, 2005.

Notary Public
My Commission Expires: 10-9-2012

## VERIFICATION

Personally appeared before me the undersigned Keith Robinson who, first being duly sworn, stated under oath that he is the President of Keith Robinson Painting, Inc.; that he is authorized to execute these Answers to Plaintiffs' Interrogatories on behalf of Keith Robinson Painting, Inc., that he has read the foregoing Answers of Defendant Keith Robinson Painting, Inc. to the Plaintiffs' Interrogatories and knows its contents; that he has made due inquiry of the officers, and employees of Keith Robinson Painting, Inc. in responding to these Interrogatories; and that the facts stated therein are true and accurate to the best of his knowledge, information and belief.

Keith Robinson
Keith Robinson
President

STATE OF SOUTH CAROLINA
COUNTY OF Dorchester

Sworn to and subscribed before me, this the 22 day of July, 2005.

Notary Public
My Commission Expires: 10-9-2012

## VERIFICATION

Personally appeared before me, the undersigned individual, Keith Robinson, who, first being duly sworn, stated under oath that he has read the foregoing Answers to the Plaintiff's Interrogatories and knows their contents, and that the facts stated therein are true and accurate to the best of his knowledge, information and belief.

Keith Robinson
Keith Robinson

SC 106859320

STATE OF SOUTH CAROLINA
COUNTY OF DORCHESTER

Sworn to and subscribed before me, this the 22 day of July, 2005.

Notary Public
My Commission Expires: 10-9-2012